FILED
JEANNE A. NAUGHTON, CLERK

NOV 2 0 2017

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                          CHAPTER 11

BROAD STREET MEDIA LLC,                         CASE NO. 16-26615 (JNP)

        Debtor.
--------------------------------------------------------X

RICHARD DONNELLY,

        Plaintiff,
v.                                              ADV. PRO. NO. 17-1450 (JNP)

STUART RICHNER, et al.,
                                                Hearing Date: November 8, 2017
        Defendants.
--------------------------------------------------------X


**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**


## MEMORANDUM DECISION

### INTRODUCTION

This matter is before the Court upon the defendants' motion to dismiss (the "Motion") the adversary proceeding (the "Adversary Proceeding") filed by the plaintiff Richard Donnelly. The Adversary Proceeding stems from Donnelly's leveraged buy-out of the Debtor, Broad Street Media, LLC ("BSM") from several of the defendants through a sale contract. The primary dispute in this Motion is whether the forum selection clause in the sale contract requires dismissal of the Adversary Proceeding. A hearing was held on November 8, 2017 (the "Hearing"), at which all parties presented oral argument. Because the Court finds that the forum selection clause applies and other grounds for dismissal are present, the Motion will be granted.

1

## FACTUAL BACKGROUND

Purchase of BSM and pre-petition actions

For the purposes of this Motion, the Court accepts as true the facts set forth in Donnelly's amended complaint filed on September 6, 2017 (the "Amended Complaint"). Dkt. No. 21. Only the facts pertinent to the issues before the Court are discussed. Donnelly is the principal and sole owner of BSM, a publishing media company. BSM was formed in 2010, and its primary assets were acquired through an asset purchase agreement with Philadelphia Media Network ("PMN") in 2010 (the "PMN Agreement"). Donnelly initially purchased a 20% interest in BSM through a sale agreement in September of 2015 (the "2015 Sale Agreement"). Believing the value of BSM to be considerably less than what he paid for it, Donnelly then filed an action against the individuals that sold him the 20% interest, Stuart Richner, Clifford Richner, Jerry Anfinson, Robert Bromeland, Shopper Enterprise LLC ("SE" and, collectively with the other sellers, the "Sellers"), and Darwin Oordt (collectively, with the Sellers, the "Defendants") for breach of contract, fraud, and several other causes of action (the "First Lawsuit"). In an attempt to settle the First Lawsuit, the parties signed a letter of intent (the "LOI") on June 22, 2016. The LOI stipulated, among other things, that Donnelly shall have unrestricted access to all of BSM's books and records regarding its revenues and obligations. Shortly following this, the parties entered into formalized agreements on July 15, 2016 (the "Settlement Agreement" and the "2016 Sale Agreement").

The Settlement Agreement settled the First Lawsuit and released all claims Donnelly may have against the Defendants. Specifically, the Settlement Agreement reads:

█████████████████████████████████



Dkt. No. 26-5 ¶ 4 (filed under Seal).

Through the 2016 Sale Agreement Donnelly purchased the remaining 80% of BSM from

the Sellers for a reduced price and became the sole owner of BSM. The 2016 Sale Agreement

called for the promissory notes signed by Donnelly (the "Secured Promissory Notes") to be

secured by, among other things, property held by BSM, as well as Donnelly's interest in BSM.

Dkt. No. 21-2. The 2016 Sale Agreement includes forum selection and choice of law clauses,

agreeing that New York law should govern the construction and rights of the parties pursuant to

the agreement, and further agreeing that:

> It is specifically agreed and acknowledged by the parties hereto
> that: (i) the courts of the State of New York ([including district
> courts]) shall have exclusive jurisdiction over any suit, claim or
> cause of action arising under or relating to this Agreement; (ii)
> venue shall be proper in either the applicable state court . . . or the
> United States District Court for the Southern District of New York;
> and (iii) it shall be a breach of this Agreement for either party to
> attempt to pursue litigation arising under or relating to this
> Agreement other than in accordance with this Section 11.8.

Dkt. No. 26-6 § 11.8 (emphasis added). The 2016 Sale Agreement also includes a merger clause

which states that "[t]his agreement constitutes the entire agreement among the parties in respect

of the transaction contemplated hereby and supersedes all prior agreements, arrangements . . .."

Id. § 11.10. Finally, the 2016 Sale Agreement also contains a clause specifically disclaiming any

3

and all representations by the Sellers, other than those contained with the 2016 Sale Agreement.

The disclaimer clause states:

> Buyer has conducted its own independent investigation, review and analysis of the business of the Companies, and acknowledges that it has been provided adequate access to . . . records and other documents . . . of Seller . . .. Buyer has taken full responsibility for determining the scope of its investigations of the business of the Companies and for the manner in which such investigations have been conducted . . .. Buyer has relied solely upon its own investigation and the express representations and warranties of the Seller set forth in this Agreement and in general, and in particular Article IV of the Agreement . . . and (b) none of Sellers or any other person has made any representation or warranty as to Sellers, except as expressly set forth in this Agreement, in general . . ..

Id. § 5.7

The Bankruptcy Case and the Amended Complaint

BSM filed a Chapter 11 petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") on August 30, 2016 (the "Bankruptcy Case"). Each of the Sellers filed a claim (the "Sellers' Claims") against the estate based on BSM having guaranteed Donnelly's promise to pay, and the Secured Promissory Notes. BSM, as the Debtor, filed objections to the Sellers' Claims on June 29, 2017 which are currently pending. Dkt. Nos. 98 – 102.

On July 14, 2017, Donnelly filed this Adversary Proceeding. The Amended Complaint was filed following the Defendants' initial motion to dismiss and brings ten separate causes of action. Generally, Donnelly alleges that the Defendants engaged in a conspiracy to conceal information from him involving BSM's debts, including its debt owed under the PMN Agreement, and BSM's debts to various landlords. Donnelly also alleges that the Defendants did not disclose all books and records as required under the agreements and actively prevented him from reviewing all of the books and records of BSM.

4

The First Claim is an alter ego claim brought against Oordt. Oordt is the former CEO of BSM, but held no ownership interest in BSM at the time of the 2016 Sale Agreement. Donnelly alleges that Oordt exercised actual control over SE and is the direct beneficiary of payments to SE pursuant to the 2016 Sale Agreement. Further, Donnelly alleges that through SE, Oordt continued to exercise control over BSM despite not having an ownership interest. The claim seeks a judgment finding that Oordt is liable to Donnelly for any damages caused to Donnelly by SE.

The Second, Third and Sixth Claims (the "Contract Claims") each request rescission of the 2016 Sale Agreement, the secured promissory notes and Donnelly's personal guaranty, as well as monetary damages owed to Donnelly. The Second Claim is a breach of contract claim brought against all Defendants. This claim alleges that the Defendants breached the LOI and the 2016 Sale Agreement by not providing Donnelly with unrestricted access to all books and records. Additional allegations include breach of the 2016 Sale Agreement by failure to inform Donnelly of pending litigation against BSM as well as other undisclosed matters. The Third Claim alleges a breach of the implied covenant of good faith and fair dealing, tied specifically to the LOI and the 2016 Sale Agreement, also based on alleged misrepresentations and concealing information.  The Sixth Claim is unjust enrichment against all of the Defendants, based on their alleged concealment of material facts to induce Donnelly to enter the 2016 Sale Agreement.

The Fourth, Fifth, Seventh, and Eighth Claims (the "Tort Claims") each request monetary damages to be paid to Donnelly. The Fourth Claim alleges fraud against the Defendants, based on allegations that the Defendants took steps to actively conceal information regarding BSM from Donnelly, and Donnelly justifiably relied on the representations made by the Defendants regarding BSM's financial status. The Fifth Claim is for negligent misrepresentation, based on

5

representations made by the Defendants that were allegedly false and without a reasonable basis, and made to induce Donnelly to enter the 2016 Sale Agreement. The Seventh Claim is breach of fiduciary duties of good faith and loyalty, alleging that the Defendants, as majority owners of BSM, owed and breached a duty to Donnelly as a minority owner. The Eighth Claim is civil conspiracy, alleging that the Defendants conspired to tortuously injure Donnelly through a common scheme to defraud.

The Ninth and Tenth Claims request declaratory judgments (the "Declaratory Judgment Claims"). The Ninth Claim requests that this Court find that there was no consideration for the release or the Promissory Notes, and that each are void and unenforceable. The Tenth Claim seeks reduction of the amounts owed by Donnelly to the Sellers under the 2016 Sale Agreement, based on the additional liabilities owed by BSM.

## MOTION TO DISMISS

On September 19, 2017, the Sellers filed this Motion. Dkt. No. 26. Oordt filed a joinder to the Motion. Dkt. No. 27. The Motion points out that the Debtor BSM is not a party to this action, and makes several broad arguments as to why this Adversary Proceeding should be dismissed. The Sellers' primary argument is that the 2016 Sale Agreement is governed by a forum selection clause which bars Donnelly from bringing claims two through ten in this Court. Accordingly, the Sellers argue, these claims can only be brought in a court in the State of New York. The Sellers next argue that the release signed by Donnelly in the Settlement Agreement bars Donnelly from bringing these claims against the Sellers in any court. Further, the Sellers maintain that the 2016 Sale Agreement includes a clause disclaiming any representations not specifically stated in the 2016 Sale Agreement, and that as a result each of the Tort Claims based in fraudulent or negligent misrepresentation must be dismissed as they are all premised on representations by the Sellers that were disclaimed if they were made at all.

6

Beyond these universal arguments, the Sellers allege that the fraud claims are not pled with particularity as required by Federal Rule of Civil Procedure 9(b), made applicable by Federal Rule of Bankruptcy Procedure (the "Rules") 7009 and that the Amended Complaint must be dismissed for failure to state a claim as required by Rule 7012(b).

The Sellers further argue the claim for breach of contract must be dismissed for several reasons. First, the Sellers' maintain that any claim related to the LOI must be dismissed because of the merger clause in the 2016 Sale Agreement. Second, that there are no damages alleged from any of the alleged breaches of the 2016 Sale Agreement and that any alleged failures to disclose outside litigation and liabilities of BSM were contemplated by the 2016 Sale Agreement.

Donnelly filed opposition to the Motion. Dkt. No 37. The crux of Donnelly's argument is that the forum selection clause in the 2016 Sale Agreement cannot be enforced because the claims brought in this Adversary Proceeding are "core" proceedings. Donnelly's opposition also argues that the choice of law clause applies only to the 2016 Sale Agreement, and as such should not be applied to any of the Tort Claims, nor to interpret the Settlement Agreement. Donnelly's opposition includes additional arguments addressing the release signed by Donnelly, as well as the other arguments made by the Sellers in the Motion.

## DISCUSSION

### I.    Jurisdiction

Bankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11, that is, the bankruptcy petition; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case. In re Exide Techs., 544 F.3d 196, 205 (3d Cir. 2008) (citing 28 U.S.C. § 1334(b); In re Combustion Eng'g, Inc., 391

7

F.3d 190, 225 (3d Cir. 2005)). The first three categories are "core" proceedings while the fourth category, "related to" proceedings, are "non-core" proceedings. Id. (citing Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999)). "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Halper 164 F.3d at 837. "Proceedings over which a bankruptcy court can legitimately exercise related-to jurisdiction include 'suits between third parties that conceivably may have an effect on the bankruptcy estate.'" In re W.R. Grace & Co., 591 F.3d 164, 171 (3d Cir. 2009) (quoting Combustion Eng'g, 391 F.3d at 226 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493 (1995)). However, while the wording is broad, "related to" jurisdiction is limited. Id. (citing Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 40, 112 S.Ct. 459 (1991) (noting the "limited authority" Congress has vested in the bankruptcy courts through related-to jurisdiction)).

The Third Circuit adopted the test for finding "related to" jurisdiction in Pacor, Inc. v. Higgins, and stated that an action is "related to" bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d 984, 994 (3d Cir. 1984) (emphasis added). The key portion of this test is that the outcome of the suit in question could have an impact on the bankruptcy estate "without the intervention of yet another lawsuit." In re Fed.-Mogul Glob., Inc., 300 F.3d 368, 382 (3d Cir. 2002). In both Fed.-Mogul and Pacor, the suit in question was between non-debtors, but the defendants argued that their indemnification claims against the debtors made the suits "related to" the bankruptcy. The Third Circuit disagreed, and stated that "at best, [the lawsuits were] a mere precursor to a potential third party claim for indemnification . . . against [the debtor]." W.R. Grace, 591 F.3d at

8

171 (quoting <u>Pacor</u>, 743 F.2d at 995). The Third Circuit has reiterated this test several times since then, most recently in <u>W.R. Grace</u>, in which the debtor was facing a potential indemnification claim by the state of Montana, in response to actions by the citizens of the state injured through mining operations conducted by the debtor. The debtor asked the bankruptcy court to enjoin the action against the state of Montana under 11 U.S.C. § 105. <u>Id.</u> at 168. On appeal, the Third Circuit upheld the bankruptcy court's finding that it had no subject matter jurisdiction to enjoin the suit. <u>Id.</u> The Third Circuit reaffirmed its earlier rulings and found that "a bankruptcy court lacks subject matter jurisdiction over a third-party action if the only way in which that third-party action could have an impact on the debtor's estate is through the intervention of yet another lawsuit." <u>Id.</u> at 173.

Given this limitation on the Court's jurisdiction, it is necessary to determine whether the Court has jurisdiction to hear and rule on the claims brought by Donnelly in the Amended Complaint.

1) Alter ego claim against Defendant Oordt

The first cause of action is an alter ego claim against Oordt. The Court does not have subject matter jurisdiction to hear this action. Under the Third Circuit test for "related to" jurisdiction, an action is "related to" the bankruptcy if it could have any conceivable impact on the estate, without the intervention of another suit. <u>See</u> <u>Fed.-Mogul</u>, 300 F.3d 368. Here, Donnelly, a non-debtor, has filed a private action against Oordt, who is neither a debtor nor creditor of the estate, asserting that Oordt should be held liable to Donnelly for any amounts that SE is determined to be liable to Donnelly in a separate action. By definition, this means that in order to have any impact on the estate, a separate action against SE will have to be resolved in Donnelly's favor. Moreover, the Court remains unconvinced that this suit could impact the estate

even after a suit against SE is resolved. Oordt has not filed a proof of claim, and BSM has not filed any action against Oordt or SE. Assuming Donnelly is successful in his alter ego claim against Oordt, and then is successful in a separate action for monetary damages against SE, that will improve Donnelly's financial condition, but still would not impact the estate. Donnelly failed to show how a determination that Oordt is the alter ego of SE would affect the size or administration of the estate regardless of the success or failure of any other actions Donnelly may bring against SE. However, it is not necessary to determine that question, as it is sufficient to find that the action in question could not conceivably impact the estate without the intervention of another lawsuit. The fact that Donnelly has simultaneously filed an action against SE does not change this analysis, a separate finding of liability against a separate party is still necessary before the estate could conceivably be impacted by Donnelly's claim against Oordt. The alternative would eviscerate the limitation on this Court's jurisdiction.  As such, the first cause of action for alter ego against Donnelly is dismissed for lack of jurisdiction.

2)  Remaining Claims

The remaining claims are the Contract Claims, Tort Claims and Declaratory Judgment Claims. The Contract Claims are brought against the Sellers, and each requests rescission of the 2016 Sale Agreement, as well as the Secured Promissory Note. There is "related to" jurisdiction regarding these actions, as a rescission of the Secured Promissory Note may reduce the Sellers' Claims against the estate, thus permitting a larger payout to other creditors. Because this could impact the estate without the intervention of an additional suit, there is "related to" jurisdiction over these claims.

Similarly, the Court finds there is jurisdiction for the Tort and Declaratory Judgment Claims. These claims are brought against the Sellers who have each filed a proof of claim in this

bankruptcy. The Sellers' Claims are premised on the Secured Promissory Note. As such, to the extent Donnelly is successful in his claims against the Sellers, it will correspondingly offset and reduce the amount of the Sellers' claims against the estate. Accordingly, the Court finds that there is "related to" jurisdiction over these claims, at least to the extent that the damages awarded will offset amounts owed under the 2016 Sale Agreement.

## II.    Core v. Non-Core

While the Court finds that there is "related to" jurisdiction over the Contract, Tort, and Declaratory Judgment Claims, the Court concludes that none of these counts are core. After determining that this Court has jurisdiction, the extent of the Court's authority to issue final determinations on the merits is dictated by whether that jurisdiction is core or non-core. See Halper, 164 F.3d at 836.  Determination of whether a matter is core or non-core in nature is "crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings." Id. Further, "[w]hether claims are considered core or non-core proceedings dictates not only the bankruptcy court's role and powers but also the availability of mandatory abstention, see 28 U.S.C. § 157(b)(4), and the enforcement of forum selection clauses." Exide, 544 F.3d at 206 (citing In re Diaz Contracting, Inc., 817 F.2d 1047, 1051–53 (3d Cir.1987)). As a result, the determination of whether these claims are core or non-core will prove dispositive for several of Donnelly's claims as the 2016 Sale Agreement contained a forum selection clause.

The Third Circuit explained the procedure for determining whether a matter is core or non-core in Halper. 164 F.3d at 836. First, a court must consult the illustrative list of core proceedings found in § 157(b)(2). Id. Second, the court must apply the Third Circuit's two-step test. "Under that test, 'a proceeding is core [1] if it invokes a substantive right provided by title

11

11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" Id. (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir.1996)). More recently, the Third Circuit expounded on this test, stating that each claim within the same cause of action must be analyzed and each alone must satisfy this test in order to be considered a core proceeding. Exide 544 F.3d at 206 (citing Halper, 164 F.3d at 836–37). A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the non-core claim becomes core. Id.

In this case, each of the Contract Claims is a state law claim asserted against non-debtors. See Exide, 544 F.3d at 206 (finding that breach of contract, unjust enrichment and conversion claims asserted against non-debtor defendants were state law causes of action). "Each claim is a state law cause of action, sounding in contract and tort. Each pre-dated the filing of the bankruptcy petition . . .." Id. at 207. Even assuming that the claims fall within the list of core proceedings under 28 U.S.C. § 157(b)(2), none invokes a substantive right under the Bankruptcy Code or is a proceeding that could only arise in the context of a bankruptcy case. See id. As a result, the Contract Claims are each non-core claims over which the Court has only "related to" jurisdiction.

Donnelly made several related arguments as to why these claims should be considered core despite not meeting the test laid out in Halper. The first argument is that the Sellers have each filed a proof of claim based on secured promissory notes given by Donnelly in the 2016 Sale Agreement, and that the filing of a proof of claim can turn a state law non-core claim into a core claim. Indeed, the Third Circuit has found that "it is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C. § 501 et seq., which, by its very nature, is a 'core' proceeding that can arise *only* in a title 11 case." Exide, 544 F.3d at 214 (citing In re

12

Argus Group 1700, Inc., 206 B.R. 737, 747–48 (Bankr.E.D.Pa.1996)) (emphasis original).

However, the court in Exide also held that the filing of a proof of claim in a debtor's bankruptcy

case does not create core bankruptcy jurisdiction over claims against non-debtor defendants. Id.

As such, the notion that filing a proof of claim automatically turns a state law claim into a core

matter, does not hold in actions asserted against non-debtor parties. Despite the Third Circuit

ruling in Exide, Donnelly cites three cases he argues support his contention that the filing of a

proof of claim turns state law claims into core claims, Kurz v. EMAK Worldwide, Inc., 464 B.R.

635, 639 (D. Del. 2011); In re Simpson, No. 14-16173 (JNP), 2015 WL 6124004, at *2 (Bankr.

D.N.J. Oct. 16, 2015); In re Red Rock Servs. Co., LLC, 522 B.R. 551 (E.D. Pa. 2014), aff'd sub

nom. In re Red Rock Servs., Co., LLC, 642 F. App'x 110 (3d Cir. 2016). However, each of these

claims involved either an action against the debtor, as was the case in Kurz, or actions by the

debtor's estate, as was the case in Simpson and Red Rock. In this case, the Debtor's estate is

neither the plaintiff nor the defendant, it is an action between non-debtor parties. The rule in the

Third Circuit is that "'actions asserted by those plaintiffs who filed actions against non-debtor

parties exclusively, regardless of whether they filed a proof of claim,' are 'presumptively

non-core.'" Exide 544 f.3d at 214 (quoting In re Best Reception Systems, 220 B.R. 932, 947

(Bankr. E.D. Tenn. 1998)). This holds regardless of what the claim filed by the creditor is.

Indeed, even where, as here, the plaintiff files an action against a defendant over a promissory

note guaranteed by the debtor, this does not create core jurisdiction over a state law claim

between non-debtors. Hickox v. Leeward Isles Resorts, Ltd., 224 B.R. 533, 538 (S.D.N.Y.1998).

In Hickox, a plaintiff filed suit in state court to recover on promissory notes issued by non-debtor

corporations, which had been guaranteed by the debtor. Id. at 534. The court granted a motion to

refer to bankruptcy court after finding that the matter was "related to" the debtor's bankruptcy

13

case, in that it could conceivably have an effect on the administration of the estate. Id. at 538. However, the court also specifically found that the matter was not a "core matter", stating that that a legal dispute between non-debtors over promissory notes is not a core proceeding. Id. at 537. The Third Circuit has supported this stating that "there is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction." Exide 544 f.3d at 215 (citing Hickox with approval).

Donnelly next argues that the claims in this action are so "inextricably intertwined" with the proof of claim filed by the Sellers that the actions become core. However, the Third Circuit explicitly rejected this argument in Exide, overruling In re RBGSC Inv. Corp., 253 B.R. 369 (E.D. Pa. 2000), in the process. Exide 544 F.3d at 215. In rejecting this argument, the Third Circuit stated:

> [I]nsofar as [RBGSC] holds that non-core claims against non-debtors are rendered core because of close business relationships between the debtor and non-debtors or "intertwinement" with a claim against a debtor, it is legally unsound and must be overruled.

Id. at 220 (emphasis added).

Finally, at the Hearing, Donnelly argued that this case should be distinguished from Exide, in that here the Sellers' Claims are the largest claims filed against the estate, and it would be more convenient and efficient for this Court to decide these matters. However, the Third Circuit specifically rejected these arguments in Exide, noting that "[j]udicial economy itself does not justify federal jurisdiction" Exide, 544 f.3d at 219 n. 16 (quoting Pacor, 742 F.2d at 994). "The test for finding jurisdiction is not a mathematical one that relies on weighing the value of total claims against non-debtors against total claims against the debtor." Id. The Third Circuit

14

has repeatedly admonished that courts are required to use the traditional analysis detailed above on a claim-by-claim basis to determine whether jurisdiction is core or merely "related to". Id. at 220. Analysis of the test laid out in Halper reveals that none of the Contract Claims invoke a substantive right under the Bankruptcy Code or is a proceeding that could only arise in the context of a bankruptcy case. As such, there is "related to", but not core jurisdiction over the Contract Claims.

Similarly, and for the same reasons, Donnelly's remaining claims are each non-core claims. Each of the Tort Claims requests monetary damages and each are state law claims. None of the Tort Claims invoke a substantive right under the Bankruptcy Code or is a proceeding that could only arise in the context of a bankruptcy case. As such, while the Court has "related to" jurisdiction in that the outcome of the cases may affect the Debtor's estate, these are not "core matters." The same rationale and result apply for each of the Declaratory Judgment Claims.

### III.    Forum Selection Clause

Having determined that the Court has only "related to" jurisdiction over these claims, it now turns to the issue of whether the forum selection clause is enforceable in this case. "The general rule is that a forum selection clause is prima facie valid and should be enforced absent a strong showing that it would be unreasonable under the circumstances." M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907 (1972). Moreover, in Exide, the Third Circuit held that a forum selection clause would be enforced in bankruptcy cases if the claims were determined to be non-core. 544 F.3d at 206; see also In re Axiant, LLC, 2012 WL 5614588, at *3 (Bankr. D. Del. Nov. 15, 2012) (Finding forum selection clauses to be binding in non-core matters). In Exide, the Third Circuit explained that if the plaintiff's claims against a non-debtor are merely "related to" the debtor's bankruptcy case, "abstention and enforcement of the forum

selection clause of the Coordinating Agreement are appropriate." Exide 544 F.3d at 206. "Courts reason that the strong policy favoring centralization of bankruptcy proceedings in bankruptcy courts does not justify the non-enforcement of a forum selection clause in a non-core proceeding." Axiant, 2012 WL 5614588, at *3 (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 201–02 (3d Cir.1983), overruled in part on other grounds by Lauro Line v. Chasser, 490 U.S. 495 (1989)).

In this case, for the reasons detailed above, each of the claims against the Sellers is merely "related to" the Bankruptcy Case, and none fall within the Court's core jurisdiction. As a result, the Court will enforce the forum selection clause. The Court finds that the forum selection clause is clear and unambiguous, and that the parties agreed that any matters related to the 2016 Sale Agreement were to be litigated in the State of New York.

### 1)   Scope of the Forum Selection Clause

In order to determine whether a forum selection clause bars a claim, the Court must determine whether the forum selection clause applies to the claims being brought. Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007) (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358–61 (2d Cir.1993)); see also Collins On behalf of herself v. Mary Kay, Inc., 2017 WL 4682108, at *3 (3d Cir. Oct. 19, 2017) (citing Phillips). Which claims are governed by the forum selection clause is determined by the language of the clause itself. See id. at 387; see also Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 300 (3d Cir. 2001) (reviewing the language of the forum selection clause to determine which claims the parties intended it to govern). In this case, as quoted above, the forum selection clause governs "any suit, claim or cause of action arising under or relating to this Agreement." (emphasis added).

Because the Contract Claims arise under the contract, and the Tort and Declaratory

Judgment claims are at least "relating to" the 2016 Sale Agreement, each is governed by the forum selection clause and must be brought in the State of New York.

### 2) Fraudulent Inducement

Donnelly's allegation the he was fraudulently induced to enter the 2016 Sale Agreement does not change the enforceability of the forum selection clause. The contract's governing law determines the enforceability of the forum selection clause, unless a "significant conflict between some federal policy or interest and the use of state law exists." Axiant, 2012 WL 5614588, at *3. In this case, the 2016 Sale Agreement states that New York Law will govern the interpretation of the contract. The Second Circuit has repeatedly ruled that in order to invalidate a forum selection clause, the resisting party must show that the fraud alleged relates to the clause specifically and not simply to the contract as a whole. In re Bennett Funding Grp., Inc., 259 B.R. 243, 252 (N.D.N.Y. 2001) (citing J.B. Harris, Inc. v. Razei Bar Indus., Ltd., 1999 WL 319330, at *1 (2d Cir. May 4, 1999) (the clause was not "*specifically* induced by fraud as required by the Second Circuit to defeat its enforcement."). Finally, because Donnelly has argued that the choice of law clause should not be applied to any of the Tort Claims, nor to interpret the Settlement Agreement, the Court notes that the Third Circuit similarly requires "that to invalidate a forum selection clause on the grounds of fraudulent inducement, the party challenging the clause must show that the clause itself was procured through fraud." Nemo Assocs., Inc. v. Homeowners Mktg. Servs. Int'l, Inc., 942 F. Supp. 1025, 1028 (E.D. Pa. 1996). Indeed, the Supreme Court ruled similarly in Scherk v. Alberto–Culver Co., stating:

> In the Bremen we noted that forum-selection clauses 'should be given full effect' when 'a freely negotiated private international agreement (is) unaffected by fraud . . ..' 407 U.S., at 13, 12, 92 S.Ct., at 1915, 1914. This qualification does not mean that any time a dispute arising out of a transaction is based upon an

> allegation of fraud, as in this case, the clause is unenforceable.
> Rather, it means that an arbitration or forum-selection clause in a
> contract is not enforceable if the inclusion of that clause in the
> contract was the product of fraud or coercion.

417 U.S. 506, 519 n. 14, 94 S.Ct. 2449 (1974).

Since there is no allegation or indication that the forum selection clause itself was included in the contract through fraudulent means, it will be enforced. As a result, the proper forum for all claims related to the 2016 Sale Agreement is New York.

### 3)  Merger Clause and the Letter of Intent

As to the specific claims made by Donnelly that involve the Sellers' alleged breach of the LOI (rather than the 2016 Sale Agreement) these are not governed by the forum selection clause, but are nevertheless dismissed. The Sellers are correct when they point out that the merger clause in the 2016 Sale Agreement merges and supersedes the rights and remedies under the prior agreement. "When a contract has a merger clause, stating that the agreement between the parties is the final agreement, the prior contract is unenforceable." Metro. Pilots Ass'n, L.L.C. v. Schlosberg, 151 F. Supp. 2d 511, 525 (D.N.J. 2001) (citing Thayer v. Dial Indus. Sales, 85 F.Supp.2d 263, 269 (S.D.N.Y.2000)). Under New York law, prior agreements and negotiations are deemed to merge and be subsumed in a later written agreement regarding the same subject matter. Indep. Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184, 1195–96 (S.D.N.Y. 1996) (citing Shubin v. Surchin, 27 A.D.2d 452, 455, 280 N.Y.S.2d 55, 59 (1st Dept.1967)); Shapiro v. Shapiro, 455 N.Y.S.2d 157, 160, 116 Misc.2d 40, 44 (Sup.Ct.1982). This is true even in the absence of a merger clause. Private One of New York, LLC v. JMRL Sales & Serv., Inc., 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007). Thus all of Donnelly's rights and remedies regarding this agreement are represented in the 2016 Sale Agreement, which did contain a merger clause

and superseded the LOI upon finalization. As a result, while Donnelly's claims related to the

LOI are not governed by the forum selection clause as his other claims are, the claims related to

the LOI are governed by the merger clause, and as such, are dismissed.

## IV.    Abstention

Finally, even if dismissal due to the forum selection clause is not appropriate, the Court

notes that it would abstain. Permissive or discretionary abstention may be raised either by the

court sua sponte or by motion of a party pursuant to 28 U.S.C. § 1334(c)(1). In re Vanhook, 468

B.R. 694, 700 (Bankr. D.N.J. 2012) (citing Bricker v. Martin, 265 Fed.Appx. 141 (3d Cir.

2008)). Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing
> in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for State law,
> from abstaining from hearing a particular proceeding arising under
> title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Various factors are considered in determining whether to exercise

permissive abstention, some courts often look to a seven factor test, while others utilize a sixteen

factor test. Compare Vanhook 468 B.R. at 701 and    In re MicroBilt Corp., 484 B.R. 56, 66

(Bankr. D.N.J. 2012) (citing In re Strano 248 B.R. 493, 504 (D.N.J. 2000)). However, many of

these factors overlap, and to determine whether permissive abstention is appropriate, many

courts consider the following factors:

> (1) the presence in the proceeding of non-debtor parties; (2) the
> extent to which state law issues predominate; (3) the unsettled
> nature of the applicable state law; (4) the presence of a related
> proceeding commenced in state court; (5) the jurisdictional basis,
> if any, other 28 U.S.C. § 1334; (6) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case; (7) the
> substance rather than the form of an asserted "core" proceeding;
> (8) the feasibility of severing state law claims from core
> bankruptcy matters to allow judgments to be entered in state court

without enforcement left to the bankruptcy court; (9) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (10) the existence of a right to a jury trial; (11) the burden on the bankruptcy court's docket; and (12) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

In re Simpson, 2015 WL 6124004, at *5 (Bankr. D.N.J. Oct. 16, 2015) (citing In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 185 (Bankr. D.N.J. 2002)). Not all factors will be applied in each case, and "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." Shalom Torah Centers v. Philadelphia Indem. Ins. Companies, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011) (citing In re Earned Capital Corp., 331 B.R. 208, 220 (Bankr. W.D. Pa. 2005), aff'd sub nom. Geruschat v. Ernst & Young LLP, 346 B.R. 123 (W.D. Pa. 2006), aff'd sub nom. In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007).

The Court finds that, to the extent the forum selection clause does not govern any particular claim in this action, permissive abstention is appropriate. The Debtor is not a party to this action, nor was the Debtor a party, beyond guarantying Donnelly's promissory note, to the 2016 Sale Agreement from which each claim in this action stems. Further, each claim is a state law claim and New York law governs at least the Contract Claims, if not all of the claims and it appears the Defendants would be entitled to a jury trial with respect to some of the claims. The sixth and seventh factors also weigh in favor of abstention, as these are non-core actions and abstaining will not affect the administration of the Bankruptcy Case. Moreover, the Court has no jurisdiction over the claim against Oordt, each of the Contract Claims must be heard in New York, and severing one of these claims and hearing the remainder in separate courts would needlessly complicate the litigation. All told, the Court finds that, at least, the first, second, sixth,

seventh, eighth, tenth, and twelfth factors all weigh in favor of abstention. As such, the Court finds that, to the extent the forum selection clause does not apply, permissive abstention is appropriate.

## V.    Dismissal with Prejudice

The Third Circuit requires that when a complaint is subject to a Rule 12 dismissal, the court should permit an amendment to the complaint to cure the defect, unless an amendment would be inequitable or futile. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Indeed, the Third Circuit has stated that the grant of a motion to dismiss with prejudice must be premised on undue delay, bad faith, repeated failure to cure deficiencies by previous allowed amendments, undue prejudice to the opposing party, or futility of amendment. In re Sobol, 545 B.R. 477, 491 (Bankr. M.D. Pa. 2016) (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1413–14 (3d Cir.1993); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997)). Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington 114 F.3d at 1434–35. For example, in Sobol, the court dismissed with prejudice on the grounds that the plaintiff lacked standing to bring the action in question, and this could not be corrected through amendment.

In this case, the Court finds that dismissal with prejudice is appropriate. The claims underlying the causes of action brought by Donnelly are either dismissed because this Court lacks jurisdiction, or because the forum selection clause dictates the claims must be brought in New York. No amendment can cure these defects; no additional facts can alter the requirements laid out in the forum selection clause. Moreover, even if Donnelly could allege additional or different facts to cure the deficiencies related to the forum selection clause, the Court would

21

nevertheless abstain for the reasons discussed above.

## VI.   Conclusion

Because the Court does not have jurisdiction over Donnelly's claims against Oordt, and the forum selection clause dictates that Donnelly's remaining claims be pursued in New York, the Court grants the Motion and dismisses all claims with prejudice. The Court does not reach the issues related to whether the release signed by Donnelly in the Settlement Agreement bars these claims, the sufficiency of the pleadings, the efficacy of the disclaimers, or any remaining allegations in the Amended Complaint or arguments made by the parties.

Dated:   November 20, 2017

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE